Robert L. COMPTON, Petitioner,

v.

UNITED STATES DEPARTMENT OF ENERGY, Respondent.

No. 82–1887.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1983.

Decided May 11, 1983.

Rehearing Denied June 22, 1983.

Robert G. Ulrich, U.S. Atty., Linda L. Parker, Asst. U.S. Atty., Kansas City, Mo., for respondent.

James R. Anderson, Kansas City, Mo., for petitioner.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

PER CURIAM.

Robert L. Compton petitions this court for review of two Merit Systems Protection Board (MSPB) decisions relating to his being laid off from the Department of Energy. Compton filed his petition for review on July 26, 1982, giving this court jurisdiction under 5 U.S.C. § 7703(b)(1) (Supp. III 1979) for judicial review of decisions of the MSPB.* We affirm the MSPB decisions.

I.

Compton was employed as a Program Analyst by the Economic Regulatory Administration (ERA) of the Department of Energy (DOE) at the GS–12 grade. He was notified that he would be separated from service on or about August 25, 1979 under a reduction in force (RIF), and he was so separated on that date. Shortly thereafter Compton appealed the decision to the MSPB. After a hearing, an initial decision in Compton's favor was rendered by the presiding official at the MSPB St. Louis office in December 1979. The presiding

---

* Section 7703 has been amended to allow the United States Court of Appeals for the Federal Circuit to review MSPB decisions, rather than other United States courts of appeals. Pub.L. No. 97–164, Title I, § 144, 96 Stat. 45 (1982) (codified at 5 U.S.C.A. § 7703(b)(1) (West Supp.1983)). The amendment did not become effective until October 1, 1982, so the petition was properly filed in our court. We will therefore maintain jurisdiction over this matter.

official ruled that the "competitive area" considered was too small. A competitive area is the part of DOE in which a victim of a RIF can compete for other jobs in the agency. DOE had defined the competitive area so that Compton was considered only for other jobs with the ERA in Kansas City, Missouri. The presiding official ruled that DOE should have had a broader competitive area and considered Compton for DOE jobs outside the ERA. The MSPB affirmed the initial decision on October 8, 1980 and ordered DOE to cancel Compton's separation by RIF.

On October 27, 1980, Compton returned to work in the Kansas City ERA office, but complained that his assignment did not comply with the MSPB's reinstatement order of October 8, 1980. Specifically, he said DOE failed to comply with the MSPB's order in that (1) after reinstatement he was assigned to the exact position from which he had been separated earlier and then, because of a lack of available work, was detailed to a GS–8 position (although he retained his GS–12 salary), (2) he was being supervised by a GS–3, (3) his work was subject to a 100% review for error, and (4) he was likely to be subjected to another RIF or some other job action.

Compton requested a compliance hearing, but the MSPB Chief Appeals Officer in St. Louis ruled on April 23, 1981—without a hearing—that DOE had complied with the October 8, 1980 MSPB decision. On June 25, 1982, the MSPB denied a petition for appeal from the Chief Appeals Officer's conclusion that DOE had complied and that a hearing was unnecessary. It is the June 25, 1982 decision from which Compton appeals, arguing that a hearing should have been ordered.

Meanwhile, Compton was the victim of another RIF. Seven months after Compton's return to work, he received a RIF notice saying he would be separated from duty on June 27, 1981. This RIF resulted from the decontrol of motor gasoline and propane, which reduced DOE's authority and the number of positions available in the agency; in fact, decontrol practically made

the ERA superfluous and dismantled it for all purposes except following through on pending cases. In this RIF, DOE defined the competitive area as the Kansas City ERA, the same competitive area it had attempted to use for the first RIF. Compton appealed to the MSPB, arguing that DOE should not have been able to use the same competitive area which the MSPB had found improper in regard to the first RIF. The MSPB rendered an initial decision on September 22, 1981 in favor of DOE. On July 6, 1982 the MSPB rendered a final decision finding the competitive area proper and that the competitive area chosen for the first RIF was not binding on the MSPB. Compton also appeals the July 6, 1982 MSPB decision.

## II.

The first issue is whether the MSPB erred in refusing to order a compliance hearing regarding the first RIF. We first note that our standard of review is very deferential. We can set aside a MSPB decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 7703(c)(1) (Supp. III 1979).

The MSPB has the authority to conduct a compliance hearing. The authority to conduct a compliance hearing clearly does not require a hearing. The regulation reads:

(a) *Notice to show cause.* The Board may issue a notice to any Federal employee who has failed to comply with an order to show cause why there was noncompliance. Such notice may require the employee or his/her representatives to appear before the Board and/or to respond to the notice in writing.

(b) *Hearing.* If the Board determines to hold a hearing on a notice to show cause, it shall be on the record.

5 C.F.R. § 1201.184 (1979). The determination as to whether there is compliance rests with the Chief Appeals Officer of the MSPB: "The Chief Appeals Officer shall take all necessary action to ascertain whether the final decision of the Board is being complied with and shall issue an opin-

ion on the matter. If the Chief Appeals Officer finds noncompliance, he/she shall undertake efforts to obtain compliance." 5 C.F.R. § 1201.182 (1979). We need decide only whether the MSPB abused its discretion or acted arbitrarily, capriciously, or otherwise not in accordance with the law in not ordering a compliance hearing.

■ The decision not to grant a hearing was reasonable. The items about which Compton complained—the work he was doing, the grade of his supervisor, the scrutiny his work was receiving, and the permanence of his appointment—are all matters not mentioned in the reinstatement decisions of December 19, 1979 and October 8, 1980. The MSPB simply ordered the cancellation of Compton's separation by RIF. Compton cites the Federal Personnel Manual for the proposition that a reinstated employee is entitled to reinstatement to a continuing position of like status. Certainly, the government was not obligated to provide "make work" for an employee when no work of that type or category was needed or available. Moreover, the sections cited by Compton only provide examples of possible remedies; they do not purport to expand the scope of the remedy ordered by the MSPB. F.P.M., ch. 351, parts 9–2(b), 9–5. Furthermore, Compton was able to submit his contentions in writing, and there was no indication his written submissions were not given fair consideration. We can see no abuse of discretion in the MSPB not ordering a hearing in this case.

### III.

The other issue is whether the MSPB was bound to find that the competitive area for the second RIF was improper because it had found the same competitive area improper when reviewing the first RIF. Compton argues that principles of res judicata and collateral estoppel required the MSPB to find the competitive area for the second RIF improper.

The Supreme Court has stated in dicta that res judicata principles can apply to administrative proceedings: "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). See also K. Davis, Administrative Law Treatise § 21:2 (2d ed. 1983). The Utah Construction case differs from the instant case. The issue in Utah Construction was whether a court must give res judicata effect to an agency's factual findings, while in the instant case the issue is whether an agency must follow its prior decisions. Furthermore, Utah Construction does not address any peculiarities of the MSPB which might make res judicata less appropriate for that agency.

■ However, we need not decide the extent to which res judicata and collateral estoppel principles apply to the MSPB in the abstract. Even if such principles fully apply to MSPB adjudications, there was not a sufficient identity of issues to trigger application of the doctrines in this case. In the instant case we are dealing with two separate and distinct transactions. The first RIF was very substantially different from the second. The RIFs affected different groups of people, involved different offices of the ERA, and were caused by different factors. A ruling as to a party's conduct for one period of time is not necessarily res judicata for the same conduct at another period of time. K. Davis, Administrative Law Treatise § 21:5, at 60. In FTC v. Raladam Company, 316 U.S. 149, 62 S.Ct. 966, 86 L.Ed. 1336 (1942), the Supreme Court dealt with judicial review of a Federal Trade Commission cease-and-desist order against the Raladam Company. The Sixth Circuit had vacated a cease-and-desist order against deceptive practices issued in 1929 and the Supreme Court had affirmed the Court of Appeals' judgment. The FTC instituted proceedings again in 1935 and issued another cease-and-desist order. The Supreme Court held that the Sixth Circuit's and its own decisions on the 1929 order were not res judicata as to the 1935 order.

316 U.S. at 152–53, 62 S.Ct. at 968–969. The Supreme Court stated:

It is clear that the reasons for refusing to enforce the Commission's order are grounded upon the inadequacy of the findings and proof, as revealed in the particular record then before this Court. Hence, these reasons are not controlling in this case, arising, as it does, out of different proceedings and presenting different facts and a different record for our consideration.

*Id.* at 150–51, 62 S.Ct. at 967–968.

More directly on point is *Second Taxing District v. FERC,* 683 F.2d 477 (D.C.Cir. 1982). The court held in that case that an Administrative Law Judge properly approved a proposed rate structure for a utility even though it had rejected a similar rate structure for the utility two years earlier. The Court held that collateral estoppel did not prevent reconsideration of issues decided in an earlier rate proceeding. *Id.* at 482–84.

Furthermore, the MSPB explained in both the initial and final decisions why it was not following the earlier decision as to the competitive area. The earlier decision had not purported to establish what competitive area would be appropriate and there was not an identity of issues in the two cases. Also, DOE presented four witnesses regarding the establishment of the competitive area and Compton presented none. Even if the circumstances in the two RIFs had been identical, we do not think DOE's failure to present adequate evidence regarding the first RIF should forever bind the agency. Therefore, in light of the differences in the two RIFs and the explanation for not applying *res judicata* or collateral estoppel to the second RIF, we find no abuse of discretion in the MSPB not considering its decision in the first RIF proceeding binding at the second RIF proceeding.

The MSPB decisions are affirmed.